MARSH *v*. PROPRIETORS OF BRANCH ROAD & BRIDGE.

A turnpike corporation over whose road a public highway has been laid, has the right to exercise its franchise till the damages awarded have been paid; and will continue, so long as it exercises the franchise, subject to all the incidental burdens; and among them, to that of keeping the road in repair, and of paying damages sustained by individuals through its default to do so.

CASE, to recover damages for an injury sustained by the plaintiff, October 22, 1844, by reason of the deficiency of a road, which the plaintiff alleged the defendants were bound to keep in repair.

It appeared, upon the trial, that long prior to October, 1843, the defendants were incorporated with power to construct a road, and to take tolls of persons passing over the same, being liable by their charter to keep the same in repair, and answerable for damages sustained by any person through their neglect. In pursuance of this authority they constructed a road, opened the same, erected gates, and received tolls, and continued in possession, demanding and receiving tolls, until after the time when the plaintiff sustained the injury set forth in the declaration.

The defendant introduced a record of the court of com-

mon pleas, at the October term 1843, laying out and establishing the entire road as a public highway; and awarding damages to the defendants, to be paid by the towns through which the road passed; and they contended that this record and the proceeding furnished a sufficient answer to the plaintiff's action. But the court ruled that the defendants had a right to retain the possession of their road until the damages awarded had been tendered, or paid; and there being no evidence of such payment or tender, ruled further, that as the defendants had remained in possession, claiming and exercising their corporate rights and power over the road, and demanding and receiving tolls, up to the time of the alleged injuries to the plaintiff, the record did not preclude the plaintiff from maintaining this action.

To these rulings the defendants excepted, and moved for a new trial.

*A. A. Parker*, for the defendants, contended that by laying out a public highway over a turnpike the latter is extinguished, and cited 2 N. H. Rep. 22, *State* v. *Hampton;* 4 N. H. Rep. 517, *Hampton* v. *Coffin;* Rev. Stat., chap. 52, sec. 2.

*Wheeler*, for the plaintiff. A road does not become a public highway until damages to land-holders are paid and the road is built and opened. Rev. Stat., chap. 52, sec. 1; *Loker* v. *Damon*, 17 Pick. 284; *Patchen* v. *Doolittle*, 3 Vt. 457; *Blodgett* v. *Royalton*, 14 Vt. 288.

Proof of the possession of property is presumptive proof of ownership. Greenl. Ev. 39, 40; *Rodwell* v. *Ridge*, 1 Car. & P. 220.

WOODS, J. This is an action against a turnpike corporation at the suit of one who has suffered a damage through the insufficiency of the road, which it is said the

corporation were bound by the terms of their charter to keep in repair. Were they legally bound, at the time when the damage accrued, to keep the road in repair? Or were they, at that time, in the legal possession of the road and in the rightful enjoyment of the franchise to which that burden was annexed?

That they were in the actual perception of the profits of the franchise, by exacting and taking the customary tolls, the case finds; and the only question relates to the effect of certain proceedings of the court of common pleas upon the right of the defendants to those benefits, and upon the existence of their franchise—for if their franchise had ceased to exist, the exaction of tolls and keeping up of gates for that purpose might have constituted an offence at law, but could not lay the foundation of the present action.

To show that their franchise had been taken from them, and with it the duties and liabilities annexed to it, and in particular the duty of keeping the road in repair, the ruinous condition of which occasioned the damage complained of, the defendants introduced the record of the court of common pleas, establishing the entire road as a public highway, and awarding damages to the defendants to be paid by the towns through which it passed; and these proceedings, the defendants contend, had the effect of divesting them of the franchise, and of relieving them of its onerous condition.

But the instructions of the court of common pleas were to a contrary effect, and were clearly correct. The law provides (Rev. Stat., chap. 52, sec. 1) that "no new highway or alteration in any highway shall be made by any town, until the damages awarded to the owners of land or other estate taken therefor, shall be paid, except in cases provided by law."

If the road may not be made before the payment or tender of damages awarded, it is not easy to see upon what

principle an entry by the towns or their agents can be justified for any other purpose. The owner of land or other estate taken for a highway, parts with no interest in it, nor with any control over it, or right to use and enjoy it, except just to the extent of the rights actually acquired by the public; which are limited to a right of way and the appurtenant and incidental rights of building and repairing. This right of building and repairing is necessarily antecedent to that of travelling upon land devoted to the easement, and must also precede the liability of the towns for default to keep the highway in sufficient repair. Until therefore the right of the towns to enter and construct a road, is acquired in the manner pointed out by law, which is the payment to the owner of the land or estate taken, the damages awarded, he remains undisturbed in the occupation and enjoyment of his estate.

Such was precisely the position of the defendants at the point of time when the plaintiff sustained damage. They were possessed of a right of way over the land through which their turnpike road extended, and a franchise to erect gates and exact tolls. By the proceedings of the court of common pleas laying out a highway upon that road, a duty devolved upon the towns to pay the sums awarded for the franchise and the easement, and after such payment, but not before, to enter and repair the road, clear it of obstructions and open it to the free use of the public as a highway. Until such payment, the defendant's franchise, which was their estate, remained unimpaired, and their enjoyment of it was as perfect as if no such proceedings had ever been instituted. Whether they might have declined the further exercise of their franchise, and without insisting upon the payment of the awarded damages as a precedent condition, have abandoned their road to the towns and to the public use, and thus have divested themselves of their property, and exonerated themselves from the duties and liabilities which were

attached by law to the possession, is a question that is not required by the case to be determined. In point of fact, they did not pursue that course, but did what they had an undoubted right to do. They remained in the exercise of their franchise. They elected not to surrender it. All that the public had acquired, therefore, was the mere right, at a time to be by the towns appointed, by paying the money awarded, to deprive the defendants of their franchise, so far as to admit of a public and free use of the highway till discontinued.

The defendants having been shown to be in the undisturbed and voluntary possession and enjoyment of their franchise, there seems to be no sound reason for calling in question their liability to the burdens annexed to it. This liability should be as extensive as the benefits for which it was imposed as a partial equivalent, and was not suspended by reason of a probability that those benefits would, at an uncertain and no distant time, be terminated.

It is suggested in the argument for the defendants, that the road having been laid out, the duty of keeping it in repair devolved upon the towns; and that they would be liable in an action for neglecting to do so. But no action lies in favor of an individual for the neglect of a town to build and open for public travel a road that has been laid out. The statute makes provision for damages sustained through the imperfections of existing highways.

For omitting to build and open a highway, an indictment may be sustained against the delinquent town.

The conclusion, therefore, is, that the instructions of the court were correct, and there must be

*Judgment on the verdict.*